In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00073-CR


______________________________




ANGELA DAWN WALDROP, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21329




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Angela Dawn Waldrop was convicted of two counts of fabricating evidence and sentenced
to ten years' confinement for each offense, the sentences running concurrently. See Tex. Penal
Code Ann. § 37.09(a)(2) (Vernon 2003). In this case, she appeals her conviction related to the
Bonham Police Department's (BPD) investigation of allegations that her former husband sexually
abused her daughters. (1)

I. FACTUAL BACKGROUND

 On December 11, 2004, Waldrop called the BPD reporting that her two daughters made
allegations that Waldrop's former husband (who was the biological father of one of the girls) had
sexually assaulted the girls. Officer Joe White from the BPD met with Waldrop and her daughters
and transported them to the police station. When White learned that some of the allegations related
to actions outside the city limits but within Fannin County, he contacted the Fannin County Sheriff's
Office to, as he testified, "take a report also." Deputy Rick Milner of the sheriff's office responded. 

 At the end of the initial meeting on December 11, both White and Milner completed reports
on the matter and attached Waldrop's written statement to their respective reports. Milner informed
Waldrop that the girls would have to undergo interviews at the Child Advocacy Center (CAC) and
undergo physical examinations. Milner also advised Waldrop to contact one of the investigators at
the sheriff's office. On December 13, Waldrop did just that, speaking to Lieutenant David Perkins
of the sheriff's office and turning over to him a microcassette recording of the girls' accounts of the
sexual abuse. 

 Perkins listened to the audiotape and suspected the girls were coached in making their
statements based on indications that the girls were reading prepared material and that Waldrop could
be heard coaching them on the content of the statement. Perkins then contacted BPD investigator
Wendell Bockman regarding the investigation and the audiotape Waldrop had given to Perkins. 
Despite the officers' suspicions, both agencies continued their investigation into the matter, and the
CAC conducted forensic interviews of the girls. The interviews confirmed that the allegations were
false. In fact, the girls denied that their father had sexually abused them and explained that their
"real" mother, "Angie," made them say several lies about their family on the tape recorder.

 Based on Waldrop's production and presentation of the recording of the false allegations, the
State charged her with fabricating evidence with the intent to affect the outcomes of the
investigations of both the BPD and the sheriff's office. Here, Waldrop now appeals her conviction
relating to the investigation by the BPD, limiting her argument to the legal and factual sufficiency
of the evidence to support the element that she "presented" the evidence to the BPD and the factual
sufficiency of the evidence to show that she knew the allegations were false.



II. APPLICABLE LAW

 A. Fabricating Evidence

 A person commits an offense if, knowing that an investigation or official proceeding is
pending or in progress, he or she "makes, presents, or uses any record, document, or thing with
knowledge of its falsity and with intent to affect the course or outcome of the investigation or official
proceeding." Tex. Penal Code Ann. § 37.09(a)(2). In this appeal, Waldrop challenges her
conviction related to the BPD's investigation on the bases that she never "presented" the audiotape
to the BPD and that she did know of the falsity of the allegations on the audiotape. Rather, she
contends, she turned the audiotape over to the sheriff's office--not the BPD--and, therefore, the
evidence is legally and factually insufficient to support her conviction for fabricating evidence as it
relates to any investigation by the BPD.

 B. Standards of Review

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, we view all the evidence in a neutral light and
determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly
wrong and manifestly unjust or whether the great weight and preponderance of the evidence is
contrary to the verdict. See Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

III. ANALYSIS

 Waldrop points to the testimony of BPD investigator Bockman to support her contention that
the evidence failed to show that she gave the audiotape directly to anyone at the BPD. On this very
particular point, we agree. Bockman did testify that Waldrop did not give him the audiotape. In fact,
it appears that no one at BPD knew about the audiotape until Perkins of the sheriff's office contacted
Bockman and informed him of the development. Officer White testified to this effect, stating that
Waldrop made no mention of the audiotape during the initial contact with law enforcement agencies. 
As to the effect of this testimony, however, we disagree with Waldrop's position.

 A. Presented the Audiotape

 First, the plain language of Section 37.09 does not require that the actor present the evidence
in question directly to the investigating agency. Again, Section 37.09 provides that a person
commits an offense if, knowing that an investigation or official proceeding is pending or in progress,
he or she "makes, presents, or uses any record, document, or thing with knowledge of its falsity and
with intent to affect the course or outcome of the investigation or official proceeding." Tex. Penal
Code Ann. § 37.09(a)(2). The Texas Penal Code does not provide a specific definition of the term
"present," so we continue our analysis with the understanding that we employ the "common usage"
of the term "present," meaning "to bring or introduce into the presence of someone" or "to offer to
view." See Tex. Gov't Code Ann. § 311.011 (Vernon 2005); Merriam-Webster's Collegiate
Dictionary 982 (11th ed. 2006).

 In pertinent part, Section 37.09 requires that the actor present the evidence with the requisite
knowledge that the evidence is false and with the intent that the evidence affect the outcome of the
investigation; it does not specify to whom such evidence must be given in order to complete the
offense. While, in most cases, the actor will have given the falsified evidence directly to the
investigating agency, we do not think that Section 37.09 is necessarily so limited.

 Reviewing the structure of the provision, we note that there is no link between the "present"
element and any specific agency. Waldrop's reading of the statute inserts an imaginary prepositional
phrase following "present" in order to identify and limit to whom the evidence must be presented. 
We will not read into the provision such a phrase and, instead, conclude that Section 37.09 does not
require that the actor present the evidence directly to each agency investigating the matter.

 We think this interpretation of the provision is consistent with the practical application of
Section 37.09. In the investigation of any alleged offense, it is not uncommon for more than one
agency to investigate the matter as it develops or to contact other agencies that may be directly or
indirectly involved in the investigation or a related matter. Indeed, here, where a report is made that
a parent or caretaker has sexually abused a child, Texas law requires a joint investigation. See Tex.
Code Crim. Proc. Ann. art. 2.27 (Vernon 2005); Tex. Fam. Code Ann. §§ 261.001, 261.301
(Vernon Supp. 2006); see also Waldrop v. State, No. 06-06-00174-CR (our opinion in the
companion case). To read into the statute that an actor would have to turn over falsified evidence
directly to each agency that may have become involved would render the statute unworkable in the
reality of complex investigations.

 We reject Waldrop's narrow reading of "present" as it relates to Section 37.09 and conclude
that Section 37.09 does not specifically require that the evidence at issue be presented directly to the
investigating agency. Here, the evidence demonstrates that Waldrop presented the falsified
audiotape. The fact that she presented the tape directly to Perkins, rather than Bockman, does not
render the evidence factually insufficient to support the jury's verdict. Section 37.09 does not specify
to whom the evidence must be presented in order to constitute an offense under that section. (2) That
said, the record here sufficiently demonstrates that Waldrop presented the audiotape to Perkins
intending to affect the course or outcome of the investigation. Since she does not challenge the
intent element, we need only point to the uncontroverted evidence that Waldrop gave the audiotape
to Perkins in order to conclude that this evidence is legally and factually sufficient to support the
jury's verdict.

 B. Made the Audiotape

 Second, we note that Section 37.09 makes it an offense not only to "present" evidence under
certain circumstances,but also makes it an offense to "make" or "use" that evidence under the same
circumstances. Both the indictment and the jury charge track the language of Section 37.09 in this
respect, authorizing the jury to return a verdict of guilty if it found that Waldrop "did . . . make or
present or use" the audiotape and found that the evidence satisfied all other elements of the offense. 

 Here, the record is replete with evidence that Waldrop "made" the audiotape recording. 
Perkins testified that Waldrop gave him the audiotape December 13 and described it as a tape
Waldrop made of the girls' statements. He also explains that, when he first listened to the tape, he
heard Waldrop's voice coaching and prompting the girls on what to say. Waldrop's young daughters
both were emphatic during their interviews at the CAC that their biological mother "Angie" made
them tell several lies about their family (3) into the tape recorder. The daughters' testimony echoes the
point that "Angie" made them say false things into the tape recorder. The older daughter explained
that Waldrop wrote down what Waldrop wanted her to say into the recorder. This statement is
corroborated by the recognizable cadence of a new reader, which was made obvious as the eight-year-old girl read the allegations and by the familiar announcement "the end" when she finished
reading her passage. Further, although the audio quality of the recording is less than perfect, there
is a female voice, presumably that of Waldrop, prompting the younger daughter on the contents of
her recorded statement. 

 No evidence suggests that anyone other than Waldrop was responsible for the recording of
the false allegations. Therefore, since Waldrop does not challenge the element of intent and we
conclude that the record sufficiently supports the finding that Waldrop "made" the audiotape of false
allegations, we conclude on this alternate basis that the evidence is legally and factually sufficient
in this respect to support the jury's finding beyond a reasonable doubt that Waldrop committed the
elements of the offense charged.

 C. Knowledge of Audiotape's Falsity

 In her brief, Waldrop states that "[t]he only evidence in the record to support a finding that
the Appellant's presentment of the tape was false is the controverted testimony of the children." The
Texas Rules of Appellate Procedure require us to construe her argument liberally. See Tex. R. App.
P. 38.1(h), 38.9. Therefore, we will read this portion of her argument as raising the factual
sufficiency of the evidence to support the element that Waldrop knew that the sexual assault
allegations were false.

 We first look to the audiotape itself. Again, the tape contains a voice, which the
uncontroverted evidence indicates as Waldrop's, coaching and prompting the younger daughter on
what to say into the tape recorder. With respect to the statements from the older daughter, we
recognize from her cadence and her announcement of "the end" that she is reading a prepared
statement alleging sexual abuse and several other misdeeds by the family in whose care she was at
the time. Also noteworthy is the seemingly forced announcement, "I want to live with my mama,"
that followed her recitation of the allegations.

 The CAC interviews of the girls confirm what seemed to be the case from the clues on the
audiotape. In those interviews, the girls deny all the allegations made on the tape recorder, especially
the statement that they wanted to live with their mother. Each explained that, while they were
visiting their mother, their mother made them say several lies about their family into the tape
recorder. Both girls made it clear that the statements on the tape recorder were not true and that it
was "Angie" who made them say those things. 

 The girls' trial testimony further supports the conclusion that Waldrop knew the allegations
were false. The younger daughter testified that those were her mother's words on the tape, not her
own. (4) The older daughter also explained that, "It wasn't me talking," and that Waldrop wrote down
the statements on a piece of notebook paper. 

 From the audiotape, the CAC interviews, and the testimony, the jury could have reasonably
inferred that Waldrop felt the need to coach and prompt the younger daughter and needed to write
down a scripted version of alleged events because Waldrop knew the allegations to be false. It was
reasonable to conclude that, had the allegations been true, such instruction would likely have been
unnecessary. No evidence in the record suggests that the allegations were true or that Waldrop had
reason to believe those allegations were true. We, therefore, conclude that the evidence that Waldrop
knew the allegations on the audiotape were false is factually sufficient to support the jury's verdict. 

IV. CONCLUSION

 Viewing the evidence in a light most favorable to the verdict, we conclude that a rational trier
of fact could have found beyond a reasonable doubt the essential elements of an offense under
Section 37.09(a)(2) of the Texas Penal Code. The evidence demonstrates that Waldrop made and
presented the audiotape of false allegations and that she knew the allegations of sexual assault were
false. The evidence does not suggest that any other individual made the audiotape or that Waldrop
reasonably could have believed the allegations to be true. Viewing this evidence in a neutral light,
we conclude that the evidence supporting the verdict is not so weak that the verdict is clearly wrong
or manifestly unjust. We overrule Waldrop's points of error.

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: January 24, 2007

Date Decided: March 22, 2007


Publish 



1. In a related appeal, Waldrop appeals her conviction for fabricating evidence with respect to
the Fannin County Sheriff's Office's investigation of the allegations of sexual abuse. See Waldrop
v. State, cause number 06-06-00074-CR.
2. Our holding today does not allow an unreasonable application of Section 37.09 in a case in
which a false document, record, or thing was given to just anyone. If the link between the person
or persons to whom an actor presents the falsified material becomes too tenuous, then the issue
raised will go to the intent element of the offense rather than the presentment element. That is, if
the actor gives the falsified evidence to someone who is not directly connected to the investigation,
then the issue may arise whether the actor intended that such evidence affect the outcome of the
investigation. The intent issue, rather than the presentment issue, necessarily limits the category of
people to whom the actor must present the evidence in question. Such issue is not raised here. 
Waldrop does not challenge the intent issue. She does not argue that she lacked the intent to affect
the outcome of the investigation of the BPD when she turned the audiotape over to the sheriff's
Office. Instead, she focuses on the act of presentment, arguing that she did not "present" the
audiotape directly to the BPD and, therefore, committed no offense. We conclude that the evidence
does show she presented the audiotape within the meaning of Section 37.09.
3. Portions of the record also suggest that Waldrop may have made this recording in an effort
to regain custody of her two daughters who were, at the time, living with their grandparents and had
been in temporary foster care a short time before this incident. This is consistent with the fact that
the girls were prompted to say on the tape that they wanted to live with Waldrop when the CAC
interviews revealed that quite the opposite was true. So, there is some evidence that Waldrop may
have also made the tape with the intent of affecting the outcome of the official proceeding which
appears to have been underway to terminate her parental rights to these two daughters. 
4. She goes on to testify that her mother mimicked her voice on the audiotape. Although this
scenario seems unlikely on hearing the tape and Waldrop points to this testimony to undermine the
jury's verdict, the jury is the sole judge of credibility and could have reasonably concluded that this
was a mechanism for the daughter to distance herself from the allegations on the tape rather than
false testimony.